IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HEARING LIFE USA, INC. )
)
)
Plaintiff )
)
v. ) CASE NO. _____
)
)
CHRISTOPHER HARMON, )
)
Defendant. )
)

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF**

COMES NOW, Plaintiff Hearing Life USA, Inc. ("Plaintiff") by and through its attorneys of record, and for its Verified Complaint against Defendant Christopher Harmon ("Defendant Harmon"), states and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is a Delaware corporation with its principal place of business in Somerset, New Jersey.

2. Plaintiff employs a number of employees who perform audiology services and provide retail equipment at Hearing Aid Center, LLC, a Kansas registered business.

3. Upon information and belief, Christopher Harmon ("Defendant") is currently employed at Hear Again, LLC, and may be served at 5999 SW 22nd Park, Suite A, Topeka, Kansas 66614 and at 2608 SW Washburn Avenue, Topeka, Kansas 66611.

4. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because Plaintiff is a citizen of Delaware and Defendant is a citizen of Kanas. In addition, Plaintiff has suffered, or is expected to suffer, damages and loss in excess of $75,000.00.

1

5. Venue for this Complaint against Defendant is proper in this Court, pursuant to 28 U.S.C. § 1391(b) (2) because a substantial part of the events giving rise to Plaintiff's causes of action against Defendant occurred in this judicial district.

## GENERAL BACKGROUND

6. Plaintiff incorporates paragraphs 1 through 5 above of this Verified Complaint as if those paragraphs were fully set forth herein.

7. Plaintiff is engaged in the business of providing professional audiology and hearing aid fitting and dispensing services to the general public.

8. Plaintiff has invested significant time, expense and resources to create and maintain its patient relationships.

9. In the course of conducting its business, Plaintiff has also invested substantial time, expense, and resources to build its reputation, image and relationships with its patients and business contacts, and it has established a valuable and substantial reputation, trade, and patronage.

10. Plaintiff maintains confidential information and trade secrets that are valuable, confidential, and proprietary to Plaintiff, and that are not generally known in the public domain.

11. Plaintiff's trade secrets, confidential information, and patient relationships have significant economic value to Plaintiff, and Plaintiff has a legitimate business interest in keeping such information confidential, in maintaining its customer relationships, and not allowing such information to be disclosed to its competitors through any improper means.

12. Plaintiff's trade secrets, confidential information, and patient relationships would be of significant economic value to its competitors.

13. In addition, certain types of Plaintiff's confidential information could be damaging to Plaintiff and would violate the privacy rights of Plaintiff's patients and employees if they were disclosed.

14. Specific examples of confidential information to which Defendant Harmon may have been exposed and/or may have accessed (with or without authorization) in the course of his employment with Plaintiff include, but are not limited to, protected patient health information, account lists, insurance and claim information, internal policies, billing statements, billing account access, financial statements, and supplier information.

15. Certain types of Plaintiff's trade secrets, including its financial statements, payroll records, salary information, account lists, financial information, business plans, billing statements, patient health information and addresses, and insurance and claim information are stored and maintained on, and may have been illegally and improperly accessed by Defendant Harmon, from Plaintiff's password-protected electronic mail systems, computers and servers.

16. In addition, Defendant Harmon may have had access, or may have unlawfully obtained access, to health, insurance and claim information that contains Health Insurance Portability and Accountability Act ("HIPAA") protected health, billing, and treatment information.

17. As a condition of employment, Defendant Harmon signed a Confidentiality, Nondisclosure, Noncompetition, Nonsolicitation and Arbitration Agreement (the "Agreement") on January 13, 2014. A copy of this agreement is attached hereto as **Exhibit A**.

18. By virtue of Defendant Harmon's employment with Hearing Life, he gained access to confidential and proprietary information of Hearing Life, including trade secrets; information relating to products, services, know-how, technical and other requirements of

customers and patients; vendor customer, and patient lists; vendor, customer and employment contracts; advertising, marketing and sales plans; rates; prices; and costs.

19. Defendant Harmon agreed that "[Hearing Life] and its successors and assigns shall be the sole owner of all patents, copyrights, trade secrets, trademarks, service marks and other legally enforceable rights in connection therewith." **Ex. A** at ¶ 3(a).

20. Defendant Harmon also agreed that "[i]mmediately upon the termination of Employee's employment with Employer, whether said termination is voluntary or involuntary, Employee shall deliver to Employer and will not knowingly keep in Employee's possession or deliver to any other Person any and all property (including Confidential Information of Employer including, without limitation, laptops, and accessories, cellular phones, any company-issued expensed office or other equipment, records, data, notes, e-mails, marketing, advertising, or other sale marketing related material, reports, proposals, lists, correspondence or specifications) or reproductions of any such property, regardless of the media or format in which such property is retained, whether it be in physical form and or stored or maintained electronically or computers or otherwise." **Ex. A** at ¶ 4.

21. Defendant Harmon further agreed that "for a period beginning on the date hereof and ending Twelve (12) months after the termination of [his] employment ... whether said termination is voluntary or involuntary, and within a 25 mile radius of any of the Employer's locations, [he] will not directly or indirectly, for any reason, whether acting independently as an individual or as an employee or consultant, advisor, investor, principal, contractor, or agent of a competitor of Employer, influence or attempt to influence, contract, solicit, interfere with, disrupt or attempt to disrupt, the relationship, contractual or otherwise, between Employer and any of its customers, clients, prospects, vendors, agents, contractors, employees or consultants,

with the purpose or intent of inducing or encouraging any customer, client, prospect, vendor, agent, contractor, employee, or consultant to terminate, cancel or alter any relationship with Employer or to breach any agreement or other obligations to Employer." **Ex. A** at ¶ 5(a).

22.     Paragraph 5 of Defendant Harmon's Agreement also clearly prohibits Defendant Harmon for a period of twelve (12) months and within a 25 mile radius from "holding any proprietary interest in, or be employed by, or perform services for or hold any proprietary interest in, or be employed by, or perform services for or receive remuneration or other consideration from, any individual, corporation, limited liability company, business trust, partnership, sole proprietorship, professional office, person or other entity or person engaged in competition with Employer ... if such entity is related in any way to, any entity engaged in the business of the retail sale or distribution of hearing aids or devices and or the fitting or dispensing of hearing aids or devices." **Ex. A** at ¶¶ 5 (a) and (b).

23.     In paragraph 6 of Defendant Harmon's Agreement, Defendant Harmon agreed and "acknowledge[d] that a monetary remedy for a breach of Sections 1 through 5 may be inadequate in that such a breach would cause Employer irreparable harm.  In the event of such a breach, Employer shall be entitled to temporary and permanent injunctive relief, and related monetary damages, including without posting bond or proving harm, temporary restraining orders, preliminary injunctions and permanent injunctions...." **Ex. A** at ¶ 6.

24.     Defendant Harmon was discharged from employment with Hearing Life on April 16, 2015, and thereafter joined a direct competitor, Hear Again LLC, which engages in the retail sale and distribution of hearing aids, devices, and the fitting or dispensing of hearing aids or devices within twenty-five (25) miles of Plaintiff's Topeka locations.

25. Upon information and belief, Defendant Harmon, while still employed by Hearing Life LLC, and continuing to this date, prepared to engage in, and continues to engage in the misappropriation and misuse of Plaintiff's Trade Secrets, transmitting Plaintiff's Trade Secrets to Hear Again, LLC, soliciting Plaintiff's clients to terminate their relationships with Plaintiff and transfer their accounts and business needs to Hear Again, LLC.

26. Specifically, Defendant Harmon has contacted Plaintiff's clients by advertising his employment with Hear Again, LLC in local newspapers by referencing his former employment with Plaintiff, attached hereto as **Exhibit B**, by sending targeted mailings, and by contacting Plaintiff's current employees. Shortly after his discharge, Defendant Harmon caused targeted mailings to be delivered to Plaintiff's clients that provided them with his contact information and new employer's information.

27. Upon information and belief, Defendant Harmon has attempted to use Plaintiff's supplier authorization codes and billing information with vendors to obtain merchandise and/or products for Hear Again, LLC.

28. Defendant Harmon's conduct was, and is, in furtherance of a scheme to obtain and convert Plaintiff's trade secrets for his own personal use and gain the property of Plaintiff, including the identities, addresses and other patient and customer information and records used to conduct business, including but not limited to Plaintiff's patient and customer lists, marketing and promotional techniques, and the goodwill generated directly and indirectly by his association with Plaintiff, and to do so by means of, *inter alia*, solicitation of Plaintiff's clients that were serviced by Defendant Harmon and whose names and other information became known to Defendant Harmon while he was employed by Plaintiff.

29. Hearing Life believes, and, therefore asserts:

a. that Defendant Harmon and Hear Again, LLC have possession or control of Plaintiff's records including at a minimum, confidential patient health information which are protected by the Health Insurance Portability and Accountability Act and/or that Defendant Harmon has copied or otherwise transmitted such information.

b. that Defendant Harmon and Hear Again, LLC will continue to use these records and information to solicit Plaintiff's accounts and to divert its business to Hear Again, LLC.

c. that Defendant Harmon will otherwise continue to engage in acts constituting a breach of the terms of the Agreement; and other tortious conduct including conversion of trade secrets and unfair competition.

## COUNT I: BREACH OF CONTRACT

30. Hearing Life incorporates paragraphs 1 through 29 above of this Verified Complaint as if those paragraphs were more fully set forth herein.

31. Plaintiff offered Defendant Harmon employment as consideration for his agreement to be bound to the terms and provisions within the Agreement.

32. Defendant Harmon agreed to the terms and provisions of the Agreement by signing the Agreement on January 13, 2014, and by accepting the benefits of the Agreement.

33. In return, Plaintiff employed Defendant Harmon for a period of fifteen (15) months.

34. Defendant Harmon has violated and breached, *inter alia*, Paragraphs 1, 4, and 5 of his Agreement with Plaintiff.

35. Defendant Harmon has violated and continues to violate his contractual obligations under Paragraphs 4 and 5 of the Agreement.

36. As a consequence of the foregoing, Plaintiff has suffered and will continue to suffer substantial damages and financial loss as a result of Defendant Harmon's breach of the Agreement.

## COUNT II: UNJUST ENRICHMENT/QUANTUM MERUIT

37. Plaintiff re-alleges and incorporates paragraphs 1 through 36 of this Verified Complaint as if fully set forth herein.

38. Plaintiff conferred a benefit on Defendant Harmon by providing him with, *inter alia*, compensation, training, office facilities, administrative services, and promotional marketing and support.

39. Defendant Harmon recognized this benefit by receiving fifteen (15) months of compensation, training, office facilities, administrative services, and marketing support as a result of his agreement to be bound by the terms of the Confidentiality, Nondisclosure, Noncompetition, Nonsolicitation and Arbitration Agreement he signed on January 13, 2014.

40. It would be inequitable to allow Defendant Harmon to retain the benefit of fifteen (15) months of compensation, training, office facilities, administrative services, and promotional marketing and support without reimbursing Plaintiff the costs associated with the aforementioned benefits.

## COUNT III: VIOLATIONS OF KANSAS UNIFORM TRADE SECRETS ACT

41. Plaintiff re-alleges and incorporates paragraphs 1through 40 of this Verified Complaint as if fully set forth herein.

42.     The Kansas Uniform Trade Secrets Act ("The Act"), K.S.A. §§ 60-3220 *et seq.*, prohibits misappropriation of trade secrets and defines "trade secrets" as:

> Information, including a formula, compilation, program, device, method, technique or process that (i) derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. K.S.A. § 60-3220(4).

43.     Plaintiff has maintained and developed highly valuable trade secrets and other proprietary information, including but not limited to the items set forth in the Agreement and its patients' protected health information and treatment plans, which is safeguarded as confidential and secret and protected from direct or indirect disclosure.

44.     Plaintiff's trade secrets and other proprietary information are extremely valuable and critical to the operation of Plaintiff's business.

45.     The Act prohibits the misappropriation of trade secrets and provides that actual or threatened misappropriation may be enjoined, and that damages (including exemplary damages for willful and malicious misappropriation) may be awarded. *See* K.S.A. §§ 60-3321 and 60-3322.

46.     Defendant Harmon's actions described herein constitute the actual and threatened continuing misappropriation or misuse of Plaintiff's confidential, proprietary and trade secret information in violation of the Act.

47.     Defendant Harmon had access, and obtained further unauthorized access as described above, to Plaintiff's trade secret information and other proprietary information during his employment with Plaintiff.

48.     Plaintiff has taken reasonable precautions to preserve the secrecy of the trade secrets to which Defendant Harmon had access and/or obtained unauthorized access.

49. Upon information and belief, Defendant Harmon remains in possession of Plaintiff's trade secret and other confidential and proprietary information, and has used and will continue to use this information to solicit Plaintiff's patients.

50. Since the end of his employment with Plaintiff on April 16, 2015, Defendant has used and will continue to use and disclose Plaintiff's trade secrets and other confidential and proprietary information for his benefit and for the benefit of Hear Again, LLC.

51. Defendant Harmon's actions expose Plaintiff to the disclosure and the continuing risk of disclosure of its valuable trade secrets and other confidential and proprietary information.

52. Defendant Harmon's misappropriation of Plaintiff's trade secrets is willful and malicious.

53. As a result of Defendant's misappropriation of Plaintiff's trade secrets in violation of the Act, Plaintiff is faced with the threat of immediate and irreparable harm.

54. Unless Defendant Harmon is enjoined from disclosing and/or utilizing Plaintiff's trade secrets and confidential information and is required to return Plaintiff's information and property that he is currently using to solicit Plaintiff's patients and vendors, Plaintiff will continue to be immediately and irreparably harmed because their competitors may receive and have use of its trade secrets and other confidential information that has been developed and maintained by Plaintiff and that is not generally known to the public, and because Defendant Harmon can use such trade secrets and confidential information to the detriment of Plaintiff.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests the following relief:

   a. A Preliminary Injunction and/or Permanent Injunction immediately prohibiting Defendant Harmon, directly or indirectly, alone or in concert with others, including any person or entity acting on Defendant Harmon's behalf, from:

      i. using, disclosing, or transmitting information including all books, records, documents and information pertaining to Hearing Life's business activities, including but not limited to clients and suppliers, client and supplier accounts, and the identities, addresses, or other information related to said clients and accounts; and requiring that all original documents, and copies thereof, be immediately returned to Plaintiff;

      ii. soliciting or attempting to solicit, any person or entity who or which was serviced by Defendant Harmon at any time during Defendant Harmon's employment (excluding his relatives) or whose name or other information became known to him as a result of his employment with Plaintiff until April 2016;

      iii. Any and all other such acts as the Court deems appropriate for injunctive relief.

   b. An Order requiring Defendant Harmon to provide Hearing Life, no more than two business days after the Preliminary Injunction and/or Permanent Injunction is issued by the Court, each and every Hearing Life client and supplier whom Defendant Harmon has solicited or attempted to solicit for his own benefit or the benefit of Hear Again, LLC.

   c. An Order issued granting Plaintiff such other costs and relief as the Court may deem just and equitable.

   d. An Order requiring Defendant Harmon refrain from directly or indirectly, owning or holding any proprietary interest in, or be employed by, or perform services for or receive

remuneration or other consideration from, any individual, corporation, limited liability company, business, trust, partnership, sole proprietorship, professional office, person, or other entity or person engaged in competition with Hearing Life within a twenty-five (25) mile radius until April 16, 2016 or until further order of the Court;

e. An Order granting Plaintiff such other costs and relief as the Court may deem just and equitable.

f. An Order taxing the costs of this action against Defendant Harmon.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates Topeka, Kansas as the place of trial.

Dated: August 19, 2015.

Respectfully submitted,

*/s/ Brian J. Christensen*
Brian J. Christensen  KS Bar No. 16528
Janelle L. Williams KS Bar No. 25343
JACKSON LEWIS, P.C.
7101 College Boulevard, Suite 1150
Overland Park, Kansas 66210
Telephone: (913) 981-1018
Facsimile:  (913) 981-1019
brian.christensen@jacksonlewis.com
kyle.russell@jacksonlewis.com
Janelle.williams@jacksonlewis.com

## VERIFICATION

STATE OF NEW JERSEY  )
                     ) ss
COUNTY OF SOMMERSET  )

I, _Andrea Maeder_, certify under oath that, having read the foregoing, the facts set forth are true, accurate, and correct to the best of my knowledge and belief.

Signed: _____

Title: _Head of HR_

SUBSCRIBED AND SWORN before me on this _18_ th day of August, 2015.

_____
Notary Public for the State of New Jersey

MAUREEN P SEBER
Notary Public, State of New Jersey
My Commission Expires 6-12-16

4832-1194-6021, v. 1