# Exhibit A

## CONFIDENTIALITY, NONDISCLOSURE, NONCOMPETITION, NONSOLICITATION AND ARBITRATION AGREEMENT

THIS CONFIDENTIALITY, NONDISCLOSURE, NONCOMPETITION, NONSOLICITATION AND ARBITRATION AGREEMENT ("Agreement"), made this 1st day of January, 2014, by and between *Hearing Life USA, Inc.*, a Delaware Limited Liability Company, with its corporate offices located at 2501 Cottontail Lane, Somerset, NJ 08873 (the "EMPLOYER") and **Chris Harmon**. ("Employee"), collectively the "Parties".

WHEREAS, EMPLOYER is in the business of providing Professional Audiology and Hearing Aid Fitting and Dispensing Services to the general public; and

WHEREAS, Employee is currently seeking to become employed by Employer or is currently employed by EMPLOYER;

NOW, THEREFORE, in consideration of the Employee's employment and or continued employment by EMPLOYER, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, the Parties agree as follows:

1    **Confidential Information**

(a)    During the Employee's employment with EMPLOYER and at all times thereafter, Employee will not (i) use, disclose or otherwise permit any Person (as defined below) access to any Confidential Information (as defined below) of EMPLOYER, or (ii) sell, license or otherwise exploit any products or services that embody in whole or in part any Confidential Information of EMPLOYER and or its subsidiaries or affiliates.    "Person" means any individual, corporation, partnership, limited liability company, trust or other entity. "Confidential Information" means any or proprietary or other non-public business information of EMPLOYER, including, without limitation, trade secrets, information relating to products, services, processes, designs, formulas, apparatus, techniques, know-how, data, strategies, forecasts, technical and other requirements of customers, developmental or experimental work, improvements, discoveries, plans for research or products, databases, computer programs, software source documents, development tools, original works of authorship, vendor and customer lists, vendor, customer and employment contracts, hardware configuration, advertising, marketing and sales plans, business plans, budgets and financial information of any type or kind, rates, prices and costs, information regarding the skills and compensation of principals, directors, officers, professionals, shareholders, employees, agents or contractors of EMPLOYER and other business information disclosed to Employee by EMPLOYER, either directly or indirectly.    The term "Confidential Information" includes all of the foregoing information, rights and materials and all summaries, reports, records, copies, memoranda, correspondence, copies, notes or other documents containing such information or portions or extracts there from, whether tangible or intangible, whether in written, oral, magnetic, electronic, photographic, optical or other form, in all stages of research and development, and whether now existing, or developed or created at any time hereafter. Confidential Information shall not include any information that is or becomes generally available to the public other than as a result, directly or indirectly through a breach of this Agreement by Employee or by any other unauthorized disclosure.

(b)     During and any time after employment with EMPLOYER, Employee shall take all reasonable precautions necessary to prevent disclosure of any Confidential Information to unauthorized Persons.

(c)     During employment with EMPLOYER, Employee will not improperly use or disclose to EMPLOYER or its employees, agents or contractors, any confidential or proprietary information or trade secrets of any former or concurrent employer or other Person, and Employee will not bring onto the premises of EMPLOYER any confidential or proprietary information or trade secrets belonging to any such employer or Person unless Employee has obtained their prior written consent to do so.

(d)     Employee recognizes that EMPLOYER has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on EMPLOYER's part to maintain the confidentiality of and to use such information only for certain limited purposes. During employment with EMPLOYER and at all times thereafter, Employee agrees to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any Person or use it except as necessary in the course of work with EMPLOYER and in accordance with EMPLOYER's agreement with such third party.

2.    **Compelled Disclosure**

Notwithstanding the provisions of Section 1 hereof, if Employee is requested to disclose any Confidential Information to any governmental, regulatory or other such authority with proper jurisdiction, Employee will promptly notify EMPLOYER and permit EMPLOYER to seek a protective order or to take other appropriate action to quash or limit disclosure. Employee shall not disclose the Confidential Information unless and until a protective order or other attempted action to prevent disclosure has been denied and all appeals from such denial have been exhausted. Employee will also exercise his or her reasonable best efforts to cooperate in EMPLOYER's efforts to obtain a protective order or take other action to prevent disclosure of Confidential Information.

3.    **Ownership of Intellectual Property and Inventions**

(a)     EMPLOYER and its successors and assigns shall be the sole owner of all patents, copyrights, trade secrets, trademarks, service marks and other legally enforceable rights in connection therewith, including, but not limited to, the right to make application for statutory protection, and Employee is granted no license, whether express or implied, to utilize such property, except in regard to Employee's employment by EMPLOYER, subject to EMPLOYER's instructions in regard to such use, and Employee waives any rights of ownership or use of such property.

(b)     From and after Employee's date of employment with EMPLOYER, Employee shall promptly disclose to EMPLOYER, in confidence, all inventions, improvements, original works of authorship, formulas, processes, computer programs, data bases and trade secrets, whether or not registerable or protectable as intellectual property, that are made or conceived, or first reduced to practice, or authored, or created by Employee, either alone or jointly with others, during the period of Employee's employment by EMPLOYER ("Inventions"). Employee agrees that all Inventions that (i) are developed using equipment, supplies, facilities or trade secrets or other intellectual property of EMPLOYER, (ii) result from or are suggested by work performed

LL Initials

by Employee for EMPLOYER, whether or not made, conceived, authored or first reduced to practice during working hours or on the premises of, EMPLOYER, (iii) relate to EMPLOYER's actual or anticipated business activities or research and development, or (iv) are developed during Employee's working hours, shall be the sole and exclusive property of EMPLOYER. Accordingly, all Inventions shall be considered "works-for-hire" within the meaning of the Copyright Act of 1976, as amended, as to which EMPLOYER is to be considered the "author" for all purposes. In the event that title to any or all Inventions, or any part or element thereof may not, by operation of law, vest in EMPLOYER, then Employee hereby irrevocably appoints EMPLOYER to be his her attorney-in-fact to execute any document in his her name and on his her behalf, and to take any action for the purpose of giving to EMPLOYER the full benefit of the assignment provisions set forth in this Paragraph."

4.      **Returning Company Documents & Property**

Immediately upon the termination of Employee's employment with EMPLOYER, whether said termination is voluntary or involuntary, Employee shall deliver to EMPLOYER (and will not knowingly keep in Employee's possession or deliver to any other Person) any and all property (including Confidential Information) of EMPLOYER (including, without limitation, laptops and accessories, cellular phones, any company-issued expensed office or other equipment, records, data, notes, e-mails, marketing advertising or other sale marketing related material, reports, proposals, lists, correspondence or specifications) or reproductions of any such property, regardless of the media or format in which such property is retained, whether it be in physical form and or stored or maintained electronically on computers or otherwise.

5.      **Non-Solicitation; Non-Competition**

(a)     Employee agrees that for a period beginning on the date hereof and ending Twelve (12) months after the termination of Employee's employment ("Termination Date"), with Employer, whether said termination is voluntary or involuntary, and within a 25 mile radius of any of the EMPLOYER's locations, Employee will not, directly or indirectly, for any reason, whether acting independently as an individual or as an employee or consultant, advisor, investor, principal, contractor, or agent of a competitor of EMPLOYER, influence or attempt to influence, contract, solicit, interfere with, disrupt or attempt to disrupt, the relationship, contractual or otherwise, between EMPLOYER and any of its customers, clients, prospects, vendors, agents, contractors, employees or consultants, with the purpose or intent of inducing or encouraging any customer, client, prospect, vendor, agent, contractor, employee, or consultant to terminate, cancel or alter any relationship with EMPLOYER or to breach any agreement or other obligations to EMPLOYER.

(b)     Employee agrees that for a period beginning on the date hereof and ending Twelve (12) months after the Termination Date, whether termination of employment with Employer is voluntary or involuntary, and within a 25 mile radius of any of the EMPLOYER's locations, not to, directly or indirectly, own or hold any proprietary interest in, or be employed by, or perform services for or receive remuneration or other consideration from, any individual, corporation, limited liability company, business trust, partnership, sole proprietorship, professional office, person or other entity or person engaged in competition with EMPLOYER. For purposes of this Agreement, the term (i) "proprietary interest" means legal or equitable ownership, whether through

13-Jan-14

stockholding or otherwise, of an equity interest in a business, firm or entity other than ownership of less than two percent (2%) of any class of equity interest in a publicly held business, firm or entity and (ii) an entity shall be considered to be "engaged in competition" if such entity is related in any way to, any entity engaged in the business of the retail sale or distribution of hearing aids or devices and or the fitting or dispensing of hearing aids or devices.

6.    **Independent Agreements/Injunctive Relief**

All of the covenants of Employee set forth in Sections 1 through 5 herein shall be construed as agreements independent of any other provision of this Agreement and shall survive the termination of Employee's employment with EMPLOYER; and the existence of any claim or cause of action against EMPLOYER, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by EMPLOYER of such covenants. In addition, Employee acknowledges that a monetary remedy for a breach of Sections 1 through 5 may be inadequate in that such a breach would cause EMPLOYER irreparable harm. In the event of such a breach, EMPLOYER shall be entitled to temporary and permanent injunctive relief, and related monetary damages including without posting bond or proving harm, temporary restraining orders, preliminary injunctions and permanent injunctions. Employee agrees to submit to the jurisdiction to the Superior Court of New Jersey, Chancery Division, Morris County and or the United States District Court for the District of New Jersey with respect to any action for injunctive relief brought pursuant to this section.

7.    **Arbitration**

Except for actions for injunctive relief brought by Employer pursuant to Section 6 above, any and all disputes between the Employer and Employee regarding any aspect of the employment relationship or termination thereof or pertaining to any other matter mutually agreed to by the parties or, failing said agreement, appointed pursuant to the National Employment Dispute Resolution Rules of the American Arbitration Association ("the Rules"). Said arbitration shall be conducted pursuant to the Rules. Each party shall bear its own costs and attorneys' fees in said arbitration, except in the event the arbitrator awards costs and attorneys' fees to either party. The claims subject to arbitration hereunder include, but are not limited to, any and all claims for employment discrimination based on sex, race, color, national origin, age, disability, sexual orientation, religion or any other protected characteristic, any and all claims for sexual or other illegal harassment, and any all claims for whistleblowing, wrongful termination, wrongful denial of benefits, failure to provide proper compensation or benefits, breach of contract, breach of promise, fraud, misrepresentation, intentional or negligent infliction of emotional distress, and or defamation. This agreement to arbitrate applies to any and all claims under the common law and or under any federal, state, or local statute, constitution, or ordinance, including, but not limited to, the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment ACT ("ADEA"), the Employee Retirement Income Security Act ("ERISA"), the Fair Labor Standards Act ("FLSA"), the New Jersey Law Against Discrimination, the New Jersey Family Leave Act, the Family and Medical Leave Act ("FMLA"), the American with Disabilities Act ("ADA"), the Sarbanes-Oxley Act, the United States Constitution and the New Jersey Constitution. EMPLOYER AND EMPLOYEE EXPRESSLY WAIVE THE RIGHT TO A TRIAL IN COURT, INCLUDING A TRIAL BY JURY, ON ANY AND ALL CLAIMS THAT ARE SUBJECT TO THIS ARBITRATION PROVISION.

(i)     Employee hereby acknowledges and confirms that he or she has had an opportunity to review this Agreement, that he or she has read this Agreement in its entirety and fully understands its provisions, and that he or she has entered into this Agreement as his or her voluntary act and deed.

(j)  This Agreement does not constitute nor create an employment agreement or contract, or is it a guaranty of continued employment. Employee is and continues to be employed by EMPLOYER as an "at-will" employee and the employment relationship between Employee and EMPLOYER may be terminated by either party at any time for any reason, with or without cause and with or without advance notice.

IN WITNESS WHEREOF, the undersigned have signed, or caused to be signed by its duly authorized representatives, this Agreement on the day and year first above written.

EMPLOYEE:

Chris Harmon

Hearing Life USA, Inc.

By: _ _ _ _ _ _ _ _ _
                                    & Date

Name. Carl Huttenberger _ _ _ _ _ _ _

Title:    Senior HR Business Partner Resources

Employee hereby acknowledges and confirms that he or she has received a fully executed copy of this Agreement.

EMPLOYEE:

Signature: _ _ _ _ _ _ _ _ _ _

Print Name: _ _ _ _ _ _ _ _ _

Date: _ _ _ _ _ _ _ _ _ _

13-Jan-14

Ti Initials